Rico H. JOHNSON, Appellant,

v.

UNITED STATES, Appellee.

Doise L. LOGAN, Appellant,

v.

UNITED STATES, Appellee.

Nos. 11938, 11940.

District of Columbia Court of Appeals.

Argued March 15, 1978.

Decided May 19, 1978.

Charles A. Kubinski, Washington, D. C., appointed by this court, for appellant Johnson.

James M. Costan, Washington, D. C., appointed by this court, with whom Knox Bemis, Washington, D. C., was on the brief, for appellant Logan.

Reggie B. Walton, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Peter E. George, and Frederick A. Douglas, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY and YEAGLEY, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

On these consolidated appeals from convictions by a jury of assault with a dangerous weapon[1] (an automobile), error is claimed by appellant Johnson in the denial of his motion for a judgment of acquittal, and by appellant Logan in the trial court's failure to give a requested instruction on "accident", his theory of the case. Both appellants claim error in permitting testimony concerning "high crime areas."[2] Concluding that there was no error requiring reversal, we affirm.

On May 21, 1976, in the early morning, appellant Johnson double-parked his automobile in the street to talk to some friends who were seated in an automobile also double-parked, but facing in the opposite direction. Appellant Logan and another person were seated in the automobile

1. D.C.Code 1973, § 22–502.

2. Appellants were charged also but acquitted of assault on a police officer with a dangerous weapon (D.C.Code 1973, § 22–505(b)) and assault on a police officer (D.C.Code 1973, § 22–505(a)).

with Johnson. An off-duty police officer driving home from work came upon the scene and finding vehicular traffic blocked by the two cars, stopped behind Johnson's automobile. After waiting a short time the officer sounded his horn. Johnson motioned to him, but kept talking to the people in the other automobile. The officer sounded his horn again, but Johnson still did not move. The officer then got out of his car and spoke to Johnson, urging him to move. There were varied accounts in the testimony as to the sequence of events which followed.

The officer testified that when he asked Johnson to move his automobile, Johnson replied to the effect that he would move it when he was ready. The officer then identified himself and Logan got out and told him that they did not care that he was a policeman, that they would "kick your ass." After Logan's outburst, Johnson got out and struck the officer. An exchange of blows followed as the officer defended himself. Almost immediately Logan joined in the affray. Believing that Logan was trying to take his gun, the officer removed it from the holster and held it in his hand as he continued fighting the appellants. Fearing that he would be at a disadvantage if the occupants of the other car were to join in the fight, the officer moved out from between the two automobiles into the street about 15 feet in front of Johnson's automobile.

As the fight continued, Logan dropped out and shortly thereafter the officer heard the sound of an automobile engine and Johnson stepped aside. The officer turned and saw Johnson's car driven by Logan headed directly toward him. Johnson was at that time standing aside from the officer, out of the path of the oncoming automobile. Not having time to get out of the way, the officer jumped onto its hood. The automobile then picked up speed, swerved to the right, went off the street, and the officer fell off. Lying in the roadway somewhat dazed, the officer observed that the automobile was being turned in his direction and fearing that Logan intended to run him down a second time, he fired his gun at it. Logan then attempted to drive from the scene, but the officer ran after him and with the help of another officer who lived in the area, arrested both Logan and Johnson.

Johnson admitted that he was blocking the roadway. He stated that the officer, after blowing his horn, started yelling at him to move and then got out and walked toward him. Johnson got out and met him halfway. The occupants of the other automobile got out also, but the officer, after identifying himself, drew his gun and ordered them back into the car. Logan then got out and urged the two men to calm down, but the argument continued.

Johnson testified further substantially as follows: The officer struck the first blow and then took out his gun and began hitting him with it; Johnson backed away trying to disengage from the fight and as the two men moved down the street, Logan got into Johnson's car and drove it in their direction. Johnson stepped aside and it was then that the officer aimed his gun at Logan, who leaned over in the driver's seat and continued driving toward them at about 15 m. p. h. As the automobile closed in on the officer, he placed his hands on its hood and backed away. The automobile then swerved from the street and shots were fired at it before it was finally stopped. With the aid of another police officer who lived in the area Johnson and Logan were placed under arrest.

Viewing the evidence as we must in the light most favorable to the government, we conclude that it was sufficient to withstand the motion for a judgment of acquittal. *Calhoun v. United States*, D.C.App., 369 A.2d 605 (1977); *Williams v. United States*, D.C.App., 357 A.2d 865 (1976); *Smith v. United States*, D.C.App., 343 A.2d 40 (1975). The jury could have found from the totality of the evidence, in our opinion, that both Johnson and Logan were participants in an altercation provoked by Johnson's obstruction of a public street in violation of the traffic regulations; that fisticuffs followed and that Logan, observing that Johnson

was getting the worst of the affray, drove his automobile into the officer with guilty knowledge, intending to aid Johnson. *See Graham v. United States*, D.C.App., 377 A.2d 1138, 1141 (1977); *Richardson v. United States*, D.C.App., 366 A.2d 433 (1966).

■ Johnson says, however, that because he did not himself drive the automobile, did not tell Logan to do so, and had abandoned the affray and stepped aside in retreat before the automobile collided with the officer, he could not be guilty of the assault. But in our view the jury could have found that Johnson stepped aside for the purpose of providing a clear path for Logan to run the officer down.

■ One who aids and abets the commission of a crime is chargeable under D.C. Code 1973, § 22–105 as a principal. And of course as an accessory Johnson was liable for any criminal act which was the natural and probable consequence of the initial encounter whether he did or did not intend the result accomplished. *See Allen v. United States*, D.C.App., 383 A.2d 363, at 367 (1978), quoting with approval from *United States v. Clayborne*, 166 U.S.App.D.C. 140, 509 F.2d 473 (1974). The trial court therefore did not err when it refused to enter a judgment of acquittal for Johnson on the assault with a dangerous weapon charge.

■ During direct examination, the officer was permitted to testify over objection that the incident took place in a "high crime area" and that it was an area ". . . where people have animosity toward the police. They think nothing of fighting the policemen or jumping on them." Both appellants contend that eliciting these statements amounted to prosecutorial misconduct which requires reversal. But for the prosecutorial misconduct to require reversal, it must significantly affect the verdict. *Villacres v. United States*, D.C.App., 357 A.2d 423 (1976). Several factors must be balanced to determine whether misconduct has affected the verdict: (1) the gravity of the misconduct, (2) the relative strength of the government's evidence, (3) the centrality of the issue affected (its direct relationship to the issue of guilt or innocence), and (4) the mitigating efforts that were made. *Jenkins v. United States*, D.C.App., 374 A.2d 581 (1977); *Villacres v. United States, supra.* Balancing these factors, we do not think that this case requires reversal. If the questions asked by the prosecutor amounted to misconduct, it was not grave misconduct. Moreover, the government's evidence was strong and, more importantly, the type of neighborhood in which the incident occurred was not central to the issue of guilt or innocence on the charge of assault with a dangerous weapon. The testimony may have been relevant on the issue of assault on a police officer and assault with a dangerous weapon on a police officer, but the appellants were found not guilty of those charges. Thus the error, if any, was harmless. *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

■ Appellant Logan contends that the trial court erred in refusing to include a specific charge on his theory of the case, *viz*, that he was not using Johnson's automobile as a weapon, but rather that he was trying to pick up Johnson and leave the area and that in the process he accidentally ran into the officer. Logan's counsel submitted a specific instruction which was to incorporate this theory of the case. While the court did not give Logan's requested instruction, it did give the standard jury instruction on accident. The rule concerning jury instructions is that a defendant is entitled to a requested instruction of his theory of the case "if there is 'any evidence fairly tending to bear upon the issue . . .', however weak." *Taylor v. United States*, D.C.App., 380 A.2d 989, 994 (1977). In this case there was no evidence presented at trial to support the contention that Logan struck the officer accidentally. However, the court did give the standard instruction and we hold that it was adequate.

*Affirmed.*