**Joseph P. FINNEGAN, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 12711.**

District of Columbia Court of Appeals.

Submitted Jan. 9, 1979.

Decided March 19, 1979.

Webster T. Knight, Washington, D. C., appointed by this court, was on the brief for appellant.

Earl J. Silbert, U. S. Atty., and John A. Terry, Michael W. Farrell, John H. Sturc, John H. Korns, and Richard W. Goldman, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before NEBEKER and MACK, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

Appellant was tried by jury for possession of a dangerous drug, namely phenme-

trazine or Preluden, in violation of D.C. Code 1973, § 33–702(a)(4). Following his failure to call two witnesses in his behalf, the trial court instructed the jury that they were entitled to infer that the witnesses' testimony, if given, would have been adverse to appellant's case.[1] Appellant was convicted, given a one-year suspended sentence, and placed on supervised probation for three years. He appeals the conviction, arguing as the sole basis for reversal that the missing witnesses jury instruction should not have been given. We find no error and affirm.

The arresting officer testified that at the time of the criminal incident he was a passenger in a marked police car. As the car turned in a westerly direction from 4th Street onto Ridge Street, N.W., he observed appellant place or drop on the ground what were later identified as four phenmetrazine pills. The officer explained that he had patrolled in the area for more than eight months and knew it to be a "high drug area." Persons accustomed to frequent the area knew that the officer came there to control the drug traffic and they referred to him as "Big Foot." As the police car was turned onto Ridge Street on the day in question, persons who were standing at the corner ran away, exclaiming "There's Foot." It was then that the officer observed appellant walk over to a fence near the sidewalk and drop from his hand what appeared to be pink pills.

Appellant, on the other hand, testified that prior to his arrest he had never even possessed the four pills, let alone placed them on the ground. Accounting for his presence in the area, he testified further that he had been given a ride into the city by a friend[2] who was going to keep a doctor's appointment. Along the way, appellant was dropped off at an auto repair shop, where he intended to ask about get-

ting his former job back. The two friends agreed to meet later. At the shop, appellant spoke briefly with an unidentified mechanic who said that the manager was not there. Appellant left the shop and, realizing that he had some time to spare before rejoining his friend, decided to take a meandering walk. He had not proceeded far when he was confronted and arrested by the police, at which time he saw the pills for the first time when one of the officers displayed them to him.

The defense evidence consisted solely of appellant's testimony. His friend and the mechanic did not appear, nor were they subpoenaed. Consequently, the court instructed the jury, over appellant's objection, as follows:

> If a witness who could have given material testimony on an issue in this case, was peculiarly within the power of one party to produce, was not called by that party, and his absence has not been sufficiently accounted for or explained, then you may, if you deem it appropriate, infer that the testimony of the witness would have been unfavorable to the party which failed to call him. However, no such inference should be drawn by you in regard to a witness who was equally within the power of either party to produce or whose testimony would have been merely cumulative or immaterial.[3]

Appellant states, correctly, that this instruction is properly given only when two conditions are met. First, the absent witness must be "peculiarly within the power of one party to produce." Instruction 2.41, *supra,* note 3. In this case, it is uncontested that both the friend and the mechanic could have been called only by appellant. Second, it must appear that

> the absent witness could give testimony that would elucidate the transaction.

---

1. The instruction is set out in full, *infra,* in the text accompanying note 4.

2. Both appellant and his friend lived in Maryland at the time.

3. Record, Vol. II, at 75–76. This instruction appears verbatim in the Criminal Jury Instructions for the District of Columbia (3d ed. 1978), also known as the Red Book, as Instruction 2.41.

[*Haynes v. United States,* D.C.App., 318 A.2d 901, 902 (1974)]

Appellant argues that neither his friend nor the mechanic could have given testimony to elucidate the transaction, or, in other words, to explain the possession of the pills. He relies for support on the *Haynes* case, *supra.*

*Haynes* involved an appeal from a conviction for possession of an unlicensed weapon. In that case, the arresting officers, responding to a reported breaking and entering, found Haynes in front of the house in question. He told them that he was there to visit a young woman. The officers told him to leave, and he did so. The owner of the house then appeared and told the officers that Haynes was a stranger to him. They followed Haynes across the street and into an alley, where they saw him deposit a brown bag on the ground, containing what later proved to be the unlicensed weapon. At trial, the young woman did not appear, and the court read the jury a missing witness instruction substantially the same as the one quoted *supra.* Haynes was convicted and appealed to this court, arguing that the instruction should not have been given. The conviction was reversed. The court ruled that the instruction was improper, reasoning that it did not appear that the young woman's testimony could "elucidate the transaction," because "[t]he occurrence concerning which she had knowledge was remote in relation to appellant's arrest . . . ." *Id.* at 903. This error was deemed prejudicial, because the case was one where the credibility of the accused was crucial and the instruction tended to cast doubt on that credibility.

Appellant Finnegan argues that his credibility was similarly crucial and was similarly damaged. He states that his friend and the mechanic had no testimony to offer elucidating the issue of the possession of the pills. At best, the friend could only have stated that he let appellant out of the car near the scene of the arrest, and the mechanic, only that appellant stopped at the shop to inquire about employment. Therefore, in accordance with the ruling in *Haynes, supra,* appellant seeks reversal of his conviction.

In our opinion, *Haynes* can be distinguished on the facts. A missing witness need not be an eyewitness to the alleged offense in order to be able to elucidate the transaction. Instruction 2.41, *supra,* note 3, requires only that a missing witness be able to give "material testimony on *an issue* in [the] case" (emphasis supplied). While it is true that the two missing witnesses would have been unable to testify as to whether appellant had or had not possessed the four pills, they did have knowledge about an issue in the case. The issue was the motive behind appellant's presence in the area where he was arrested, and that motive related directly to the offense with which he was charged.

The arresting officer testified to the effect that appellant had been found in a place known as a high drug area and where, for the most part, strangers came only to buy drugs. Thus, it was implied that appellant had, in fact, been there looking for drugs, had been successful in obtaining them, and had been caught as he sought, after observing the police car, to dispose of them.

Appellant, on the other hand, sought to explain that he was in the neighborhood innocently, that he was only passing through. Certainly, the testimony of his friend and of the mechanic would have lent credence to his version of the facts. The trial court obviously came to this conclusion.[4]

4. The court stated (Record, Vol. I at 6):

Now, the Government's position is he [appellant] wasn't down there on an innocent purpose and in my judgment if he had been driven down there and dropped off, that would confirm—that would go a lot to establish innocent purposes of being down in that area. It really would. I'm sure it would—argue very strongly to the jury, look, he has stated why he was down there.

Thus, the missing witnesses could have elucidated the transaction, or, to phrase it more clearly, they could have given material testimony on an issue in the case. Consequently, we find *Haynes* inapplicable, and we hold that no error was committed when the failure of appellant to call his friend and the mechanic as witnesses was pointed out to the jury.[5]

*Affirmed.*

MACK, Associate Judge, dissenting:

I do not agree that the testimony of the so-called "missing witnesses" could have elucidated the transaction.

[5] Appellant also complains that the prejudice created by the erroneous instruction was inflamed by a comment from the bench that the case "is really a question of who do you believe." Record, Vol. I at 9. Because we find that the instruction was not improper, we find also that this remark was neither erroneous nor inflammatory. In fact, the court went on to tell the jury that the outcome of the verdict depended on whether the jury believed the testimony of the arresting officer beyond a reasonable doubt. This was certainly a correct characterization of the state of the evidence.